**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ZEP INC.**

    **Plaintiff,**                    **Case No. 2:09–cv-760**
                                         **JUDGE GREGORY L. FROST**
    **v.**                                **Magistrate Judge Mark R. Abel**

**MIDWEST MOTOR SUPPLY CO.,**
**d/b/a KIMBALL MIDWEST**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Strike and/or Exclude Declaration of C. Francis Whitaker, III and Exhibit 3 to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Motion to Strike") (Doc. # 46) and Memorandum in Support of that Motion (Doc. # 46-1), Plaintiff's Response in Opposition to Defendant's Motion to Strike (Doc. # 54), Defendant's Reply Memorandum in Support of Defendant's Motion to Strike (Doc. # 60), and Defendant's Motion for Permission to Submit Evidence Regarding Mediation, If and Only If, Plaintiff's Disclosure of Confidential Communications at Mediation is Allowed ("Defendant's Motion to Submit Evidence") (Doc. # 47).

Based on the following, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Strike (Doc. # 46) and **GRANTS** Defendant's Motion to Submit Evidence (Doc. # 47).

## I.  Background

Plaintiff Zep Inc. and Defendant Kimball Midwest participated in court-ordered mediation in Charlotte, North Carolina that began at 9:00 a.m. on August 18, 2009 and ended at

1

3:30 a.m. on August 19, 2009.  The purpose of the mediation was to attempt a global resolution of all of the then-pending litigation between these two parties.  At that time, the parties were engaged in litigation in the federal courts of Ohio, North Carolina, South Carolina, and Texas, including case number 2:08-cv-1085 that was before this Court.  In those cases, Plaintiff alleged that eight of its sales representatives breached their employment contracts and their duties of loyalty and good faith when they left Zep's employment for a position with Kimball Midwest, that Kimball Midwest tortiously interfered with these individual sales representatives' contractual and employment relationships with Zep, and that Kimball Midwest and all of these individuals misappropriated trade secrets and confidential information belonging to Zep.

The United States District Court for the Western District of North Carolina ordered the mediation, which took place in North Carolina.  At the conclusion of the mediation, the parties executed an agreement titled: "Confidential Memorandum Regarding Material Terms of Settlement of Litigation" ("Settlement Agreement").  (Doc. # 12.)  As a result of the Settlement Agreement the parties dismissed all of the pending federal litigation in August 2009.

On August 31, 2009, Plaintiff filed the instant action alleging claims for relief arising from Defendant's hiring one of Plaintiff's sales representatives, David Cobb.  The Settlement Agreement includes a provision that prohibited Defendant from hiring any of Plaintiff's employees from August 19, 2009 through August 20, 2010.  The parties dispute Cobb's date of hire.  Defendant claims that Cobb was hired on August 18, 2009, and Plaintiff claims that Cobb was hired on September 1, 2009.  Plaintiff filed a claim for breach of contract alleging that Defendant hired Cobb during the one year hiring prohibition in breach of the Settlement Agreement.  Plaintiff alleges alternatively that if Cobb's date of hire was August 18, 2009,

Plaintiff was fraudulently induced into entering into the Settlement Agreement.

Plaintiff has filed a motion for partial summary judgment (Docs. # 39, 40) and Defendant has filed a motion for summary judgment (Doc. # 41). Plaintiff attached to its memorandum in support of its motion a declaration from its general counsel and secretary C. Francis Whitaker, III ("Whitaker Declaration"). (Doc. # 40-1.) In that declaration, Whitaker avers that during the settlement discussions, at approximately 12:30 a.m. on August 19, 2009, counsel for Defendant "suggested a last-minute change to the effective date of the Agreement from the 18th to the 19th, contending that it made sense to do so since the mediation was now concluding on the 19th." (Whitaker Declaration ¶ 13.)

On March 25, 2010, Defendant moved to strike the Whitaker Declaration as inadmissible. (Doc. # 46.) That motion is fully at issue. (*See* Docs. # 54, 60.)

Also on March 25, 2010, Defendant filed a motion requesting that, if the Court denies its motion to strike the Whitaker Declaration, the Court permit Defendant to rebut that evidence by submitting evidence of its own related to the settlement negotiations. (Doc. # 47.) Plaintiff did not respond to that motion.

## II.  Motion to Strike

Defendant asks the Court to strike certain portions of the Whitaker Declaration because they disclose confidential statements and conduct from the parties' mediation and because each portion "is not based on fact and/or personal knowledge, is not relevant to the underlying breach of contract issue, violates the parol evidence rule, violates the rules of this Court, and is vexatiously and unreasonably interposed in this case." (Doc. # 46-1 at 1.)

## A. Disclosure of Confidential Mediation Statements and Conduct

Defendant asks the court to strike paragraphs 10, 11, 12, 13, 17, and 20 of the Whitaker

Declaration because they are confidential and their disclosure violates Rule 16.3 of this Court's

Local Rules, a mediation privilege available under the common law of the Sixth Circuit, and

Rule 408 of the Federal Rules of Evidence.

### 1. Local Rule 16.3

Defendant argues that Local Rule 16.3 prohibits the introduction of averments contained

in certain paragraphs of the Whitaker Declaration. This Court disagrees.

Rule 16.3(c) provides:

> In addition to Fed. R. Evid. 408, and any other applicable privilege, pursuant to
> 28 U.S.C. § 652(d) evidence of conduct or statements made in settlement
> negotiations is not admissible to prove liability for or invalidity of a claim or its
> amount. In order to promote candor and protect the integrity of this Court's
> [Alternative Dispute Resolution ("ADR")] processes, in addition to other
> protections afforded by law all communications made by any person (including,
> but not limited to parties, counsel, and judicial officers or other neutral
> participants) during ADR proceedings conducted under the authority of this Court
> are confidential, and are subject to disclosure only as provided in subsection
> (c)(3) of this Rule.

S. D. Ohio Civ. R. 16.3(c)(1).

This Rule by its express terms relates to "ADR proceedings conducted under the

authority of this Court." *Id.* The parties, however, were ordered to mediation by the North

Carolina court and the mediation was conducted under the authority of that court.[1] Further, and

again by its express terms, the Rule relates to the admission of evidence of conduct or statements

---

[1]This Court did at one time order mediation of the case. (Doc. # 49.) That mediation was
held on April 19, 2009. (Docs. # 50, 57.) On that same day, the Southern District of Ohio
Mediator reported that the parties were at impasse.

4

"to prove liability for or invalidity of a claim or its amount[.]" *Id.* In other words, for the purpose of proving liability of the underlying claim about which the parties are mediating or the amount that claim is worth. That is not the case here. The conduct and statements are not offered here to prove liability on the underlying claims or the amount those claims are allegedly worth. Consequently, Local Rule 16.3 does not prohibit submission of any of the statements contained in the Whitaker Declaration.

### 2. *Goodyear* Privilege and Rule 408 of the Federal Rules of Evidence

Defendant argues that the Sixth Circuit has recognized a mediation privilege in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), "which mandates that settlement negotiations are confidential and inadmissible." (Doc. # 46-1 at 5.) Defendant continues: "The settlement privilege established by the Sixth Circuit is related to the general principle that 'evidence of statements made in compromise negotiations is . . . not admissible' under Rule 408 of the Federal Rules of Evidence." *Id.*

In opposition, Plaintiff argues that the law of North Carolina, not Ohio, governs this dispute and *Goodyear* is not binding on that court. Further, Plaintiff contends that, if Ohio law applies, the evidence is still admissible because Federal Rule of Evidence 408 and *Goodyear* do not prohibit a party from offering into evidence its own settlement communication and that it does not prohibit the use of settlement communications for a purpose other than proving liability for the same claim that was the subject of the negotiation.

In reply, Defendant argues that Ohio law governs both Plaintiff's fraud and contract claims and it also governs the issue of privilege. In that regard, Defendant expands its argument from reliance only upon *Goodyear* and Federal Rule of Evidence 408, to include reliance on the

statutory privilege found in Ohio Revised Code Section 2710.03 to support its argument for exclusion of certain paragraphs of the Whitaker Declaration. However, Defendant contends that if North Carolina law applies, Plaintiff has failed to cite to "a single case in North Carolina that permits the introduction into evidence of mediation discussions in subsequent litigation." (Doc. # 60 at 2.) Finally, Defendant agues that, even if Plaintiff were permitted to offer evidence of its "own settlement communications," Plaintiff here attempts to introduce much more than just its own settlement offer. The court will first address the choice of law issue and then consider the parties arguments under the appropriate state law.

### 1. Applicable law

Defendant argues that Ohio law applies to Plaintiff's fraud claim because the Settlement Agreement contains a valid forum selection clause that dictates Ohio law applies. Also, Defendant contends that in a diversity action, Federal Rule of Evidence 501 requires that the substantive law applicable to a claim for relief dictates the privilege law that applies. Here, Defendant maintains, that law is the law of the state law of Ohio. Defendant's arguments are not well taken.

First, the Court notes that Federal Rule of Evidence 408 would be applicable irregardless of the state law applicable to this action. However, that Rule does not prevent admissibility of the portions of the Whitaker Declaration at issue here. Rule 408, like this Court's Local Rule 16.3, relates to the admission of evidence "on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). The Rule specifically states that it "does not require exclusion if the evidence is offered for purposes not

prohibited by subdivision (a)."  Fed. R. Evid. 408(b).  *See also C & E Servs., Inc. v Ashland Inc.*,

539 F Supp 2d 316, 320-2 (D. D.C.) (because evidence was not being used to establish validity

of underlying claims extinguished by settlement, but rather for "other purpose" of establishing

defendant's misrepresentations upon which plaintiffs allegedly relied, evidence was not barred

by Fed. R. Evid. 408).  In the instant action, as stated above, the statements are not offered to

prove liability on the underlying claims about which the parties were mediating or the amount

those claims are worth.

 Second, with regard to the forum selection clause, that applies by its terms to the

enforcement of the Settlement Agreement.  Here, Plaintiff contends that this evidence was

submitted in support of its fraud claims.  As to that claim, Plaintiff is correct that the law of

North Carolina governs.  As the Sixth Circuit has directed:

  Federal courts sitting in diversity must apply the choice-of-law rules of the
forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941);
*Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir.
1987).  Therefore, the district court was required to apply Ohio choice-of-law
rules.  In tort actions, Ohio traditionally relied upon *lex loci delicti*, the place
where the tort occurs, in determining the law to be applied in actions requiring the
court to decide on the choice of law.  However, the Ohio Supreme Court held in
*Morgan v. Biro Mfg.*, 15 Ohio St. 3d 339, 342 (1984), that *lex loci delicti* would
no longer be presumed to apply when a choice of law was at issue.  The court
held that Ohio courts must look instead to the balancing test set forth in the
Restatement (Second) of Conflict of Laws, beginning with section 146, in
determining which state's law to apply.  *Morgan*, 15 Ohio St. 3d at 341-42 ("It is
apparent that the traditional rule of *lex loci delicti* is still viable in Ohio, but is no
longer used to automatically determine the prevailing state law.  Other interests of
the states involved within the controversy must be thoroughly analyzed. . . .  We
hereby adopt the theory stated in the Restatement of the Law of Conflicts."); *see
also Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994) (explaining that
Ohio now applies the Restatement analysis rather than *lex loci delicti*); *Lawson v.
Valve-Trol Co.*, 81 Ohio App. 3d 1, 4 (Ohio App. 1991) (same); *Barile v. Univ. of
Va.,* 30 Ohio App. 3d 190, 193 (Ohio App., 1986) (same).  Therefore, in Ohio, a
party may overcome the presumption that the law of the place where the injury
occurs will be applied to a tort action, if it can demonstrate that another state has a

more significant relationship to the action.

*Muncie Power Prods. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873-74 (6th Cir. 2003). The factors to consider when determining the state with the most significant relationship are the: (1) place of the injury; (2) place where the conduct causing the injury occurred; (3) domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) place where the relationship between the parties, if any, is located. *Morgan*, 15 Ohio St.3d at 342 (citing Section 145 of 1 Restatement of the Law 2d, Conflict of Laws 414).

In the case *sub judice*, the alleged conduct causing the fraud occurred in North Carolina and the signing of the Settlement Agreement occurred in North Carolina during a mediation ordered by the District Court for the Western District of North Carolina. The purpose of the court-ordered mediation was to resolve litigation between the parties that were pending in North Carolina, Texas, South Carolina, and Ohio. Defendant offers no reasons why Ohio has a more significant relationship to the fraud claim than North Carolina's relationship. Consequently, the Court finds that Defendant has failed to overcome the presumption that the law of the place where the injury occurred, here North Carolina, applies to Plaintiff's fraud claim. Because of this conclusion, Federal Rule of Evidence 501 requires that North Carolina privilege law applies as well.

### 2. Mediation privilege under North Carolina law

Plaintiff contends that the applicable North Carolina statute governing the admissibility of information conveyed during North Carolina mediations does not bar Plaintiff's reliance on Defendant's actions during the mediation, quoting: "Evidence of statements made and conduct occurring in a mediated settlement conference . . . shall not be subject to discovery and shall be

inadmissible in any proceeding in the action or other civil actions on the same claim." N.C. Gen. Stat. § 7A-38.4A(j). Plaintiff concludes that, while information revealed during the parties' negotiations would have been inadmissible to prove liability in the underlying litigation or another civil action based on the same claims, it is admissible where the plaintiff files an unrelated lawsuit based solely on the other party's fraudulent inducement of a settlement agreement. Plaintiff's argument is well taken.

Consequently, the Court concludes that the law of North Carolina does not prohibit introduction of the statements and conduct that occurred during the court-ordered mediation related to Plaintiff's claim of fraudulent inducement. Accordingly, the Court **DENIES** Defendant's Motion to Strike as it relates to striking paragraphs 10, 11, 12, 13, 17, and 20 of the Whitaker Declaration based on privilege.

## B. Relevance

Defendant requests that the Court strike paragraphs 5 through 7, 10 through 17, and 20 from the Whitaker Declaration because these paragraphs are irrelevant to Plaintiff's breach of contract claim, which is the subject of Plaintiff's motion for partial summary judgment, which the Declaration was filed to support. Defendants' arguments are not well taken.

While the Court agrees that some of the paragraphs are not relevant to Plaintiff's breach of contract claim, those paragraphs are relevant to Plaintiff's fraud claim. Although Plaintiff filed the Whitaker Declaration at the same time it filed its motion for partial summary judgment, Plaintiff relies on portions of the Declaration to support its motion but also relies on portions to support its memorandum in opposition to Defendant's motion for summary judgment in which Defendant moves for judgment on Plaintiff's fraud claim.

Accordingly, the Court **DENIES** Defendant's Motion to Strike as it relates to striking paragraphs 5 through 7, 10 through 17, and 20 for irrelevance.

## C. Parol Evidence Rule

Defendant moves to have stricken paragraphs 10 through 13, 17, and 20 of the Whitaker Declaration because they are barred by the parol evidence rule. The parol evidence rule prohibits "evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of" an unambiguous contract. *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, paragraph one of the syllabus (1952). Both parties agree that the Settlement Agreement is unambiguous. Plaintiff, however, maintains that the parol evidence rule does not apply. Plaintiff contends: "Neither party is asking the Court to interpret the contract. Instead, both seek to have the Court apply the facts to the Agreement and the law." This Court disagrees.

As Defendant correctly explains, both parties are indeed asking the Court to interpret the Settlement Agreement. The parties specifically disagree as to the meaning of the term "hire" and spend many pages arguing that the Court should agree with their interpretation of the meaning of that term. Consequently, the parol evidence rule does apply here and does prohibit the type of extraneous evidence Plaintiff is attempting to present to the Court. Consequently, the Court **GRANTS** Defendant's Motion to Strike paragraphs 10 through 13, 17, and 20 of the Whitaker Declaration from the Court's breach of contract analysis. However, the paragraphs are not stricken from the Court's analysis of Plaintiff's fraud claim.

## D. Conjecture, Speculation, and Opinion

Defendant requests that the Court strike paragraphs 11 and 20 and the last sentence of

paragraph 13 from the Whitaker Declaration because they contain statements that are not based on personal knowledge nor do they set forth admissible facts. With regard to paragraph 11, Whitaker declares: "I fully expected that, upon executing the Agreement, Zep would not lose another sales representative to Kimball Midwest until at lease sometime after August 19, 2010. Otherwise, I never would have signed or authorized Zep to enter into the Agreement." (Doc. # 40-1 ¶ 11.) The last sentence of paragraph 13 states: "Again, I never would have agreed to change the effective date of the Agreement had I known that Kimball Midwest intended to use the revised date to argue that it had 'hired' yet another one of Zep's employees even as we negotiated the Agreement." *Id.* ¶ 13. With regard to paragraph 20, Whitaker avers that he believes that Defendant's representative's behavior "manifested a conscious desire to induce Zep's negotiating team to strike a deal on false pretenses." *Id.* ¶ 20. Defendant asks the Court to strike these statements as conjecture, speculation, and opinion.

Parties must demonstrate that their summary judgment affidavits are made on personal knowledge. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002); Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."). In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and established by specific facts. *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1355 n.2 (6th Cir. 1996).

The Court finds that the averments in paragraphs 11 and 13 to which Defendant objects are simply not speculation, conjecture, or opinion. They are statements as to why the declarant

himself did what he did. These are not statements for which Whitaker had no personal knowledge, such as a statement like: "Mr. Doe would not have signed the Settlement Agreement if he had known that Cobb had been hired that day by Kimball Midwest." Or: "I believe [or it is my understanding] Mr. Doe would not have agreed to change the date on the Settlement Agreement if he had known that Kimball Midwest hired Cobb on August 18." That is not the case, however, with regard to paragraph 20. That paragraph is the exact type of speculative, opinion testimony that is properly excluded under Rule 56(e).

Accordingly, the Court **DENIES** Defendant's Motion to Strike as it relates to paragraphs 11 and 13 and **GRANTS** it as it relates to paragraph 20.

### III.  Motion to Submit Evidence

In Defendant's Motion to Submit Evidence, Defendant asks the Court to grant it the opportunity to provide its own testimony related to the settlement negotiations if the Court allowed the Whitaker Declaration to stand in that regard. Because the Court concludes that Whitaker's testimony regarding the mediation is properly before it, it shall **GRANT** Defendant's Motion to Submit Evidence. Defendant is given until June 2, 2010 to file evidence on this issue.

### III.  Conclusion

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Submit Evidence (Doc. # 47) and gives Defendant until June 2, 2010 to file evidence on this issue. Further, the Court **GRANTS in part and DENIES is part** Defendant's Motion to Strike (Doc. # 46). Specifically, the Court **GRANTS** Defendant's Motion as it relates to striking from the Whitaker Declaration paragraph 20 from its consideration entirely, paragraphs 10 through 13 and 17 from its breach of contract analysis, and **DENIES** the motion in all other regards.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT COURT**