IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZEP INC.,

    Plaintiff,

    v.

MIDWEST MOTOR SUPPLY CO.,
d/b/a KIMBALL MIDWEST,

    Defendant.

Case No. 2:09–cv-760
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court on the following: (1) Plaintiff's motion for partial summary judgment (Doc. # 39) and brief in support of that motion (Doc. # 40), Defendant's memorandum in opposition (Doc. # 44), and Plaintiff's reply (Doc.# 56); (2) Defendant's motion for summary judgment (Doc. # 41) and memorandum in support of that motion (Doc. # 41-1), Plaintiff's memorandum in opposition and reply in support of its motion for partial summary judgment (Doc. # 43), Defendant's reply (Doc. # 51), and Defendant's supplemental memorandum (Doc. # 66)[1]; (3) Defendant's motion to strike the affidavit of Brad Peterson (Doc. # 45) and memorandum in support of that motion (Doc. # 45-1), Plaintiff's memorandum in opposition (Doc. # 53), and Defendant's reply (Doc. # 58); (4) Plaintiff's motion to submit documents for *in camera* inspection (Doc. # 55); (5) Defendant's motion to strike Plaintiff's motion to submit documents for *in camera* inspection and to strike Plaintiff's reply in support of

---

[1]In an Opinion and Order issued by this Court on May 25, 2010, the Court granted Defendant's request to submit additional evidence related to its request for summary judgment on Plaintiff's fraud claim. (Doc. # 60.) Defendant filed a memorandum (Doc. # 66) and the Declaration of Grant B. Osborne, Esq. (Doc. # 66-1) on June 4, 2010.

its motion for partial summary judgment (Doc. # 59), Plaintiff's memorandum in opposition (Doc. # 61), and Defendant's reply (Doc. # 63).

For the reasons that follow, the Court **DENIES** Plaintiff's motion for partial summary judgment, **GRANTS in part and DENIES in part** Defendant's motion for summary judgment, **DENIES as MOOT** Defendant's motion to strike the affidavit of Brad Peterson, **DENIES as MOOT** Plaintiff's motion to submit documents for *in camera* inspection, **GRANTS in part and DENIES in part** Defendant's motion to strike Plaintiff's reply in support of its motion for partial summary judgment and **DENIES as MOOT** Defendant's motion to strike Plaintiff's motion to submit documents for *in camera* inspection.

## I.  Background

Plaintiff and Defendant participated in court ordered mediation in Charlotte, North Carolina that began at 9:00 a.m. on August 18, 2009 and ended at 3:30 a.m. on August 19, 2009. The purpose of the mediation was to attempt a global resolution of all of the then-pending litigation between these two parties.  At that time, the parties were engaged in litigation in the federal courts of Ohio, North Carolina, South Carolina, and Texas, including case number 2:08-cv-1085 that was before this Court.  In those cases, Plaintiff Zep alleged that eight former Zep sales representatives breached their employment contracts and their duties of loyalty and good faith when they left Zep's employment for a position with Defendant Kimball Midwest, that Kimball Midwest tortiously interfered with these individual sales representatives' contractual and employment relations with Zep, and that Kimball Midwest and all of these individual defendants misappropriated trade secrets and confidential information belonging to Zep.

As a result of the mediation, the parties executed an agreement titled: "Confidential

Memorandum Regarding Material Terms of Settlement of Litigation" ("Settlement Agreement"). (Doc. # 12.[2]) As a result of the Settlement Agreement the parties dismissed all of the then-pending federal litigation.

On August 31, 2009, Plaintiff filed the instant action alleging that Defendant breached the Settlement Agreement and, alternatively, that Defendant fraudulently induced Plaintiff to enter into the Agreement. Plaintiff's claims for relief arise from Defendant's hiring one of Plaintiff's sales representatives, David Cobb. The Settlement Agreement includes a provision that prohibited Defendant from hiring any Zep employee from August 19, 2009 through August 19, 2010. The parties dispute Cobb's date of hire. Plaintiff claims that it was September 1, 2009, in violation of the Settlement Agreement and Defendant contends that Cobb was hired on August 18, 2009, the day before the Agreement's hiring prohibition took effect.

On March 25, 2010, Defendant filed its motion to strike the affidavit of Brad Peterson (Doc. # 45), which was filed by Plaintiff in support of its motion for partial summary judgment. That motion is fully at issue. (*See* Docs. # 53, 58.)

On April 12, 2010, Plaintiff filed its motion to submit documents for *in camera* inspection, requesting the Court to view certain documents that it wished to utilize in support of its reply memorandum filed in support of its motion for partial summary judgment. (Doc. # 55.) On April 22, 010, Defendant filed a motion to strike Plaintiff's motion, requesting the Court to strike Plaintiff's motion for *in camera* inspection and to strike Plaintiff's reply filed in support of its motion for partial summary judgment. (Doc. # 59.) That motion is fully at issue. (*See* Docs.

---

[2]The parties requested (Doc. # 11) and were granted (Doc. # 13) permission to file the Settlement Agreement under seal.

# 61, 63.)

The Court will address each motion before it.

## II. Plaintiff's Motion to Submit Documents *In Camera* and Defendant's Motion to Strike

### A. Standard

The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings. *See* Fed. R. Civ. P. 12(f) (limited to striking pleadings or portions of pleadings). Instead, trial courts make use of their inherent power to control their dockets, *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 516 (6th Cir. 2003), when determining whether to strike documents or portions of documents.

### B. Discussion

Plaintiff requests permission to submit three documents for *in camera* inspection that it wants to use to support its reply brief it filed in support of its motion for partial summary judgment. (Doc. # 55.) Defendant argues that the Court should strike Plaintiff's reply brief in its entirety and that Plaintiff should not be permitted to submit documents to this Court for *in camera* inspection. (Doc. # 59.)

#### 1. Plaintiff's reply brief

On March 25, 2010, Plaintiff timely filed a memorandum in opposition to Defendant's motion for summary judgment combined with Plaintiff's reply in support of its motion for partial summary judgment. (Doc. # 43.) Then on April 12, 2010, Plaintiff filed a second reply brief in support of its motion for partial summary judgment. (Doc. # 56.) That reply brief was also timely filed. Defendant contends that Plaintiff's second reply brief should be stricken because it violates this Court's Local Rules and because it is beyond the permissible scope of a reply.

With regard to this Court's Local Rules, Defendant argues that Plaintiff filed a second reply brief without first requesting this Court's permission, and thus, it was filed in contravention of this Court's Local Rule 7.2, which permits filing of only a memorandum in support of a motion, an opposition memorandum, and a reply memorandum.  *See* S. D. Ohio Civ. R. 7.2.  Additional memoranda may be filed only with leave of Court for good cause shown.  *See id.*  Plaintiff, however, asserts that it split its reply brief into two separate documents, that the total number of pages in the two documents did not exceed the Court's 20 page limit, and the reply was filed within the time permitted under the Local Rules.  Therefore, Plaintiff maintains, the second reply brief was not filed in violation of Rule 7.2.  Further, Plaintiff indicates that it did request permission to file the second reply brief if the Court considered it necessary for leave to be requested.  (*See* Doc. # 56) ("Based on the foregoing explanation, Zep does not believe it necessary to seek leave of court to file this Reply under Local Rule 7.2.  However, should the Court or Defendant conclude otherwise, the undersigned respectfully requests such leave.").

The Court finds Plaintiff's arguments well taken. While it is not common for a party to file its reply brief in two separate documents at two different times, in this instance, the Court finds no violation of its Local Rules.  The briefs were filed timely, did not together exceed the permitted page limit, and proper permission was requested for filing the second brief.

As to the scope of Plaintiff's second reply brief, Defendant is correct that it is impermissible and must be stricken.  Plaintiff's motion for partial summary judgment requests judgment only as to its breach of contract claim and not to its fraud claim.  Consequently, Plaintiff's reply brief in support of its motion for partial summary judgment is limited to its breach of contract claim.  Therefore, the Court **GRANTS in PART and DENIES in part**

Defendant's request to strike Plaintiff's reply brief and hereby **STRIKES** all portions of Plaintiff's reply brief that are related to its fraud claim.

### 2. Plaintiff's request for *in camera* inspection

Plaintiff requests permission to submit three documents in support of its reply brief that were designated as "Confidential / Attorney's Eyes Only" during the parties' previous litigation. These documents, Plaintiff contends, support its claim that Defendant considers individuals to be "hired" on the date they begin their employment. The Court, however, finds it unnecessary to consider any evidence[3] related to the interpretation of the word "hire" in the Settlement Agreement. As the Court explains *infra*, interpretation of the meaning of the term "hire" is accomplished in this instance by considering the language used within the four corners of the Settlement Agreement. Accordingly, the Court **DENIES as MOOT** Plaintiff's motion to submit documents for *in camera* inspection and **DENIES as MOOT** Defendant's request to strike that motion.

### III. Motions for Summary Judgment

Both parties move for summary judgment on Plaintiff's breach of contract claim and Defendant also requests summary judgment on Plaintiff's fraud claim.

### A. Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

---

[3]Even if it had been necessary for the Court to consider evidence, it would have been precluded from considering any of the deposition transcripts filed by Plaintiff or Defendant in support of their motions for summary judgment because all of the transcripts lack an accompanying signed court reporter certification, which is an "essential portion[] of [the] transcript[]." S. D. Ohio Civ. R. 7.2(e). The error means that the transcripts filed with this Court fail to qualify as proper summary judgment evidence under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 30(f)(1).

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

   The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B.  Breach of Contract**

   The Settlement Agreement contains a choice of law provision requiring this Court to apply Ohio law to any claim for a breach of the Agreement.  To succeed on a breach of contract claim under Ohio law, a plaintiff must establish the "existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff."  *Doner v. Snapp*, 98 Ohio

App. 3d 597, 600 (2d Dist. Miami Cty. 1994) (citations omitted).  In the instant action, the parties dispute only whether Defendant breached the Settlement Agreement and, if it did, whether Plaintiff suffered any damages as a result of the breach.  Thus, the Court must first determine whether Defendant breached the Settlement Agreement.

The parties agree that the Settlement Agreement includes a provision that prohibited Defendant from hiring any Zep employee from August 19, 2009 through August 19, 2010.  Defendant argues that Cobb was hired on August 18, 2009 and Plaintiff claims that Cobb was hired on September 1, 2009.  Plaintiff argues that "an Ohio employee's 'hire date' is the first day for which he receives wages."  (Doc. # 40 at 16.)  Defendant asserts that being hired and starting work for pay are two separate events which may, or may not, occur at the same time.  Defendant contends that Cobb was hired when he accepted Defendant's written offer of employment, agreed to the amount of compensation, and had submitted his resignation to Zep.  The Court must, therefore, determine the meaning of the term "hire."

"This requires an inquiry into the meaning of the Agreement's terms, with recognition that 'the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.' "  *Andrefsky v. Shapiro*, No. 22052, 2004 Ohio App. LEXIS 6642, at *15 (9th Dist. Summit Cty. Dec. 30, 2004) (quoting *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, at paragraph one of the syllabus (1987)).  Common words, like hire, "will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."  *Id.* (quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, paragraph two of the syllabus (1978)).  Black's Law Dictionary defines "hire" as: "To engage the labor or services of another for wages or other

payment." Black's Law Dictionary (7 ed. 1999) at 735. It defines "employment" as: "Work for which one has been hired and is being paid by an employer." *Id.* at 545. By these definitions alone it is clear that Defendant's argument is correct. The common understanding of hire is the engagement of another to work, just as the common understanding of employment is working for pay. These are two separate events that may, or may not, occur at the same time. This interpretation does not result in manifest absurdity nor is some other meaning clearly evidenced from the face or overall contents of the Settlement Agreement.

Moreover, the cases upon which Defendant relies support this conclusion. In *Koballa v. Twinsburg Youth Softball League*, No. 23100, 2006 Ohio App. LEXIS 4783 (9th Dist. Medina Cty. Sept. 20, 2006), an Ohio appellate court considered a claim of discrimination in hiring and employment. The court noted that Ohio's anti-discrimination statute does not define "hire" or "employment" and analyzed the two terms by citing to their definitions in Black's Law Dictionary, as this Court just did. The *Koballa* court determined, and again as this Court just did, that an individual may be hired before his or her employment, *i.e.*, before the first day of working for wages, begins.

The United States Court of Appeals for the Sixth Circuit has also addressed the difference between the date of hire and the date an individual starts his or her employment in *Owen v. Goodyear Tire & Rubber Co.*, 138 L.R.R.M. 2160 (6th Cir. 1991). The plaintiff in *Owen* was a bargained for employee whose terms of employment were subject to a collective bargaining agreement. The facility at which the plaintiff was employed closed. The collective bargaining agreement provided for preferential hiring at a facility in Tennessee for the plaintiff and other employees from the closed facility. The plaintiff submitted to the Tennessee facility

9

an application for employment on March 27, 1984. However, on March 26 and 27, 1984, before receipt of the plaintiff's application, the employer offered employment to two non-union individuals and those individuals accepted the offer. The Sixth Circuit concluded "that it was not unreasonable" for the defendant to take the position that the two outside individuals "were hired before the [plaintiff's] application [was received]." *Id.* at 9-10.

Plaintiff's case law submitted to the contrary does not contradict this conclusion. The main case relied upon by Plaintiff, *Marusa v. Brunswick*, No. 04-CA0038-N, 2005 Ohio App. LEXIS 1132 (9th Dist. Medina Cty. March 16, 2005), is described by Plaintiff as one of "[t]he leading Ohio cases that define what it means 'to hire' an individual." (Doc. # 40 at 17.) Plaintiff claims that *Marusa* "agree[s] [with Plaintiff] that an individual is not 'hired' until the first day he works for wages." *Id.* However, *Marusa* does not stand for such a proposition.

The plaintiff in *Marusa* was a firefighter who was terminated for failing to complete paramedic training within two years of his hire date. His hire date was agreed by the parties to be the same day as the plaintiff's first day of work, at which time the plaintiff submitted his acceptance of the offer of employment that he had signed ten days earlier. There was no discussion as to why the parties chose to define his date of hire as his first day of work, as opposed to the date he signed the written offer of his employment. The only reference to this issue by the court is as follows: "The offer clearly stated 'within two years from date of hire, employees must successfully complete the Paramedic Training.' The offer form was due December 18, 2000, which was determined to be Appellant's start date as a full time firefighter." *Id.* at 25. The Court was not called upon to determine the date of hire–nor did the date of hire matter since the plaintiff failed to complete the training regardless of whether he was considered

hired when he signed the offer letter or when he returned the offer letter on his first day of work. Perhaps the date of hire was defined in the collective bargaining agreement that governed the plaintiff's employment or perhaps the defendant chose to rely on the later of the two relevant dates to provide the plaintiff with more time to complete the training. Whatever the case, the *Marusa* court made no determination that an individual is considered hired only when he begins his actual first day of work for wages as Plaintiff contends.

The Court concludes that Cobb was hired on August 18, 2009 and began his employment on September 1, 2009. Thus, Defendant did not breach the Settlement Agreement. Consequently, there is no need for the Court to address whether Plaintiff incurred any damages as the result of Defendant's alleged breach. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as it relates to Plaintiff's breach of contract claim and **DENIES** Plaintiff's motion for partial summary judgment.

## C. Fraud

Plaintiff argues in its memorandum in opposition to Defendant's motion for summary judgment on Plaintiff's fraud claim that it was fraudulently induced into entering into the Settlement Agreement, stating:

> Part of Zep's fraud claim is based on Kimball Midwest's breach of its duty to disclose that it was hiring Cobb before or during the parties' mediation. However, Zep also bases its fraud claim on Defendant's false representation of a material fact – specifically, its agent's last-minute suggestion to change the effective date of the Agreement from August 18th to the 19th under the falsely-benign auspices that this was appropriate because the mediation was concluding on the 19th.

(Doc. # 43 at 11.) Plaintiff maintains that had it known of Cobb's hire, it would not have agreed to change the effective date of the Settlement Agreement.

In an affidavit executed by C. Francis Whitaker, III, Zep's general counsel and secretary

11

who was present during the August 2009 settlement negotiations, Whitaker averred that at approximately 12:30 a.m. on August 19, 2009, counsel for Defendant, Irl Reasoner, "suggested a last-minute change to the effective date of the Agreement from the 18th to the 19th, contending that it made sense to do so since the mediation was now concluding on the 19th." (Doc. # 40 ¶ 13.)

In rebuttal, Defendant states: "Contrary to Mr. Whitaker's assertion, the change in the effective date of the no-hire provision was not slipped by Plaintiff in the 11th hour of negotiations." (Doc. # 66 at 5 fn. 1) For support, Defendant cites to paragraph 27 of the Declaration of Grant B. Osborne, Defendant's North Carolina counsel who was involved in the mediation, which provides:

> Kimball Midwest, at approximately 6:40 p.m., after the Mediator had consulted with both parties regarding the date on which the proposed "no-hire" agreement should take effect and due to the lateness of the hour, proposed a 12-month "no-hire" agreement that would start on August 19, 2009[.]

(Doc. # 66-1 ¶ 27.)

On May 25, 2010, this Court issued an Opinion and Order that considered, *inter alia*, the appropriate state law to be applied to Plaintiff's fraud claim, concluding that it was the law of North Carolina. (Doc. # 62.) The North Carolina Supreme Court explains:

> [T]the following essential elements of actual fraud[4] are well established: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Additionally, any reliance on the allegedly false representations must be reasonable. *Johnson v. Owens*, 263 N.C. 754, 757, 140

---

[4]North Carolina law requires the same elements for causes of action for fraud and for fraud in the inducement. *See Media Network, Inc. v. Long Haymes Carr, Inc.*, ___ N.C. App. ___, 678 S.E.2d 671, 684 (2009).

12

> S.E.2d 311, 313 (1965). The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion. *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 225, 513 S.E.2d 320, 327 (1999); *see also Johnson*, 263 N.C. at 758, 140 S.E.2d at 314 (observing that "[j]ust where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine.").

*Forbis v. Neal*, 361 N.C. 519, 526-27 (N.C. 2007). *See also Anderson v. Sara Lee Corp.*, 508 F.3d 181, 189 (4th Cir. 2007) (quoting same language).

Defendant moves for summary judgment, arguing that Plaintiff did not reasonably rely on the alleged concealment of Cobb's hire and that Plaintiff cannot establish the first element of its fraud claim, *i.e.*, a false representation or concealment of a material fact, because Defendant had no duty to disclose that it hired Cobb.

### 1. Duty to disclose

A duty to disclose arises in three situations. The first instance is where a fiduciary relationship exists between the parties to the transaction. *Harton v. Harton*, 81 N.C. App. 295, 297 (N.C. Ct. App. 1986) (citing *Link v. Link*, 278 N.C. 181 (1971)).

> The two remaining situations in which a duty to disclose exists arise outside a fiduciary relationship, when the parties are negotiating at arm's length. The first of these is when a party has taken affirmative steps to conceal material facts from the other. *See, e.g.*, *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974). . . .
>
> A duty to disclose in arm's length negotiations also arises where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence. *See, e.g.*, *Brooks v. Ervin Construction Co.*, 253 N.C. 214, 116 S.E. 2d 454 (1960).

*Id.*

Plaintiff argues that Defendant had a duty to disclose that arose when it took affirmative steps to conceal a material fact, *i.e.*, when it requested that the date of the Settlement Agreement

13


be changed from August 18, 2009 to August 19, 2009. Plaintiff further argues that, even if Defendant possessed no duty to inform Plaintiff of Cobb's hire, once Defendant's representative suggested that the date be changed, Defendant was required to make a full and fair disclosure as to why the suggestion was made. *See Ragsdale*, 286 N.C. at 139 ("The rule is that even though a vendor may have no duty to speak under the circumstances, nevertheless if he does assume to speak he must make a full and fair disclosure as to the matters he discusses."). This Court agrees.

If a jury determines that Defendant took affirmative steps to conceal a material fact during the mediation, *i.e.*, that Cobb was hired on August 18, 2009, or that Defendant's representative had knowledge that Cobb had been hired and suggested the date change to prevent his hire from being in violation of the negotiated "no hire" provision, then Defendant had a duty to disclose the hire. However, the evidence as to what occurred at the mediation regarding the alleged suggested date change is conflicting. Plaintiff's representative, Whitaker, filed his sworn declaration indicating that Defendant's representative, Reasoner, suggested a last minute change to the date, at approximately 12:30 a.m. In rebuttal, Defendant filed a sworn declaration from one of its representatives, Osborne, in which Osborne avers that "Kimball Midwest" at approximately 6:40 p.m. proposed a 12-month "no-hire" agreement that would start on August 19, 2009. Thus, while Defendant does not rebut directly Plaintiff's claims regarding the 12:30 a.m. request to change the date, it does present evidence that the change was proposed much earlier to the mediator, suggesting that there was no last minute trickery.

The Court cannot make credibility determinations at this juncture. The evidence before the Court, *i.e.*, the Whitaker Declaration and the Osborne Declaration, is certainly sufficient for a

jury to determine that Defendant breached its duty to disclose that it had hired Cobb on August 18, 2009, after it had suggested a last minute change in the effective date of the Settlement Agreement.

Moreover, Defendant's argument that Plaintiff could have discovered Cobb's hire if it had exercised reasonable diligence does not change the Court's conclusion. *See Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346 (N.C. App. 1999) (citing *Rosenthal v. Perkins*, 42 N.C. App. 449, 451-52 (1979) (claim not established when party relying on the false or misleading representation could have discovered the truth by exercise of reasonable diligence). When a party relies on false or misleading representations or the concealment of material information to its detriment, it can defeat a defendant's argument that it failed to exercise reasonable diligence to discover the material information by showing that it was "denied the opportunity to investigate." *Id.*

Here, there is no dispute that Cobb lied about going to work for Kimball Midwest to the Zep manager who accepted Cobb's resignation on August 17, 2009, and asked him at that time if he planned to go to work for Kimball Midwest. Cobb affirmatively stated that he did not plan to go to work for Kimball Midwest. Cobb did not correct this false statement until the following day, at which time the Zep representatives were already in North Carolina at the mediation. Further, as Plaintiff correctly notes, so long as the operative date of the parties' agreement remained August 18, 2009, there was no need for any Zep employee to report Cobb's hire during the mediation. The need to immediately report Cobb's August 18, 2009 hire only arose at 12:30 a.m. on August 19, 2009, when Kimball Midwest suggested a change to the Settlement Agreement's effective date from August 18 to August 19.

15

Accepting Plaintiff's evidence as true and viewing it the light most favorable to Plaintiff, the Court agrees that Plaintiff has at least raised a genuine issue of material fact as to whether it was denied the opportunity to investigate whether its agreement to such a change would negatively affect its interests.

### 2. Reasonable reliance

Plaintiff argues that reasonable reliance is not required under North Carolina law. Plaintiff, however, in incorrect. *See Forbis*, 361 N.C. at 527. Plaintiff additionally contends that if it were required to do so it can show that there is a genuine issue of material fact as to whether it did reasonably rely on Defendant's failure to disclose its hiring of Cobb and Defendant's last minute date change. Plaintiff's argument is well taken.

As the North Carolina Supreme Court stated in *Forbis*, the reasonableness of a Plaintiff's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion. *See id.* Here, the facts are not so clear that they support only one conclusion. Therefore, the Court concludes that the reasonableness of Plaintiff's reliance on the seemingly innocuous suggestion to change the date of the Settlement Agreement's hiring prohibition is a matter for the jury.

### 3. Conclusion of fraud claim

Based on the foregoing, the Court concludes that a genuine issue of material fact exists and that a reasonable jury could return a verdict in favor of Plaintiff on its fraud claim. Accordingly, the Court **DENIES** Defendant's motion for summary judgment as it relates to Plaintiff's fraud claim.

### IV. Defendant's Motion to Strike Affidavit of Brad Peterson

Plaintiff submitted the affidavit of Brad Peterson to support the damages element of its breach of contract claim. The Court has determined that Defendant did not breach the Settlement Agreement and that, therefore, there was no need for the Court to address whether Plaintiff incurred any damages as the result of Defendant's alleged breach. Consequently, it is unnecessary to address whether the Peterson affidavit attesting to damages is properly before the Court. Accordingly, the Court **DENIES as MOOT** Defendant's motion to strike the Peterson affidavit.

### V. Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for partial summary judgment (Doc. # 39), **GRANTS** Defendant's motion for summary judgment on Plaintiff's breach of contract claim and **DENIES** it as to Plaintiff's fraud claim (Doc. # 41), **DENIES as MOOT** Defendant's motion to strike the affidavit of Brad Peterson (Doc. # 45), **DENIES as MOOT** Plaintiff's motion to submit documents for *in camera* inspection (Doc. # 55), **DENIES** Defendant's request to strike Plaintiff's reply brief (Doc. # 56), **GRANTS** Defendant's request to strike all portions of Plaintiff's reply brief that are related to its fraud claim, and **DENIES as MOOT** Defendant's request to strike Plaintiff's motion to submit documents for *in camera* inspection (Doc. # 59).

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT COURT**